My name is Dean Dickey, and together with my colleague Megan Konkonas, we represent the Brevet Direct Lending Short-Term Duration Fund and FCS Advisors, referred to in the briefs, and I'll refer to them here this morning as the Brevet Predators. The Brevet Predators filed suit to hold Doug Nelson, an official of the State of Missouri involved with the Metis Project, individually, and the State of Missouri accountable for certain false and misleading representations which were made to induce Brevet Predators to invest over $60 million in a minority-owned contract, which was servicing a $150 million federally funded Missouri project involving health care. Counsel, were those representations made to FCS? Those representations were, in fact, made to FCS representatives who were on the call because, as the facts allege, show that the FCS Advisors is a loan servicer and a servicer of various investments by the Brevet entities. Brevet entities is an investment company which has a number of investment vehicles through various investments, one of which happens to be the Direct Short-Term Duration Fund, which, as alleged in the complaint, is an interesting business. It is an impact lender, and the purpose of its lending is to provide support, capital, and other financial assistance to minority-owned and small businesses in various phases of development. So you're saying the representation was direct to you because you were on a conference call with Brevet and the state official? That's correct. The actual people on the call were working for and paid for by FCS investors, but they're a loan servicer. So they basically, under various internal documents, are involved with the actual processing of transactions, even though there are different funds. Other than being on the call, what direct statements to FCS are there in the facts, if any? In the facts that were alleged, there are statements regarding the present intent of Doug Nelson with respect to the performance of EngagePoint, the current status of EngagePoint, what was EngagePoint involved in, and what, most importantly from the investor's standpoint, is what the likelihood was of the continuation of the federal funding of the MEDEZ project. If you go back in history, Your Honor, you may well recall that there were some issues, particularly in the state of Missouri, as to whether the Affordable Care Act and the development under that would go forward. Would the legislature of the state of Missouri actually continue with the program? Would the software needed to upgrade MEDEZ actually be completed? And what was the role of this minority contractor in EngagePoint in that process? If I understand the record, the district court concluded that you didn't meet the heightened pleading standard for your fraud allegation. How did the district court hear if that's... The district court heard significantly, Your Honor, because if you turn to her page and a half discussion of the analysis under Rule 9b, she basically said... Which pages? Do you know which pages you're referring to? Yes, I do, Your Honor. If it's easy, tell me. If not, go ahead. Specifically in the page... Pages 21... Thank you. 22... Go ahead.  Go ahead. In answer to Judge Smith's question, the district court effectively determined as a matter of law that reliance could not be found by a fact finder, a reasonable jury, because the contract between the state of Missouri and MEDEZ was, quote, terminable at will. I thought the finding of law is whether these kinds of statements can be expressions of opinion or statements of fact. Well, there is a little discussion about that, in fact. But what the court in the opinion puts in quotes does not look at all of what was unleashed. And for that, I would direct Your Honors to the complaint, which is found in the joint appendix... What paragraph? Pages 12 through 59. No, which paragraph of the complaint? Here are the paragraphs. No, tell me the number. Okay, go ahead. 43, 45, 52 through 62, 64 through 74, 96 through 97, 114 through 128. Counsel, in none of those do you have any quotes, do you? You know, typically they put in a quote and they say our words to that effect or that kind of stuff. I don't find that in your complaint, right? That's correct, but this is not a defamation case. Usually what you are referring to in quotes, Your Honor, are defamation. Well, Counsel, they can be statements of expressions of opinion or statements of fact. In this kind of case, read the Clark v. Olson case, if I have the name of the case right. Well, that's right, Your Honor. But just because opinions can be actionable depending on the context, an opinion that is a statement of present intention, and for purposes of the judge's analysis with respect to reliance, the contract being terminable at will is not antithetical to the statements that were made. In other words, none of the statements that we are talking about that are referenced in all of those paragraphs are inconsistent with the concept of terminable at will. And most importantly in determining whether the statements are actionable, you need to look at the overall circumstances in which the representations are made. Who was Doug Nelson? Doug Nelson was the commissioner in charge of this entire project. He was in control. He was the person who could decide whether EngagePoint remained or didn't remain. He's the person who could direct all the affairs. What was the circumstance alleged that gave rise to this transaction? It is undisputed in the record that exists that Doug Nelson directed EngagePoint to find a new infusion of capital. EngagePoint went out and did that. And as part of the last process, the lender that they found, our clients, asked and was set up with an agenda a conference with the man in charge for purposes of asking questions about the current status of payment, the likelihood of the project going to completion because it involved three phases. They were in phase one. Nelson told the Brevet folks that they were already doing, that EngagePoint was already doing work on phase two. The purpose of that call, as understood by Mr. Nelson, as alleged in the complaint, was to give support to a lender considering providing the desired financing. What the district court said in making a factual determination about reliance was that as a matter of law, one cannot rely on representations of a state official where a contract is terminable at will. We submit that there were no statements regarding a guarantee. This is not a situation where we are saying there was a promise that the exercise of the right of termination would never happen. This is not like the case in which you have an agent saying that he had a lifetime contract which was in direct conflict with the written contract. All that we are saying here is that the present intention, which even if it is an opinion that is held, is actionable if it's false. Our position with respect to the judge's determination, as a matter of law, no reasonable jury could rely on the facts. We submit that that is a decision that is, under Missouri law, left to the trier of fact, not the district court, on a motion to dismiss. And that in this case, the motion to dismiss the fraud claims, there was no discovery. There was no opportunity to look at documents. There was no opportunity to get sworn testimony. And indeed, under the recent case, Olin v. Dakota Access, which was decided by this court in late December, mid-December of 2018, Is that a Missouri case, counsel? Pardon me? Is that a case based on Missouri law, the Eighth Circuit case you just talked about? Is it based on Missouri law? I don't know for sure. This case is controlled by Missouri law, right? I believe it is. No, your case is controlled by Missouri law, right? Our case is controlled by Missouri law. And you think the Eighth Circuit case was, too, a Missouri case? The Olin v. Dakota Access, which was in December of 2018, I'm not sure whether it was based on Missouri law or not, but I know that Missouri law specifically provides that a ruling on deciding reliance on a motion to dismiss is reversible error. And that's Governo v. Albers, and it's a Western Missouri 2010 case. What about the fact that there's a lot of hedging language here? And I think the district court relied on this. For example, one of the allegations was that Engage Point was, quote, likely to continue working on phases two and three. That kind of hedging language would seem to undermine the claim a bit, not to mention support the fact that it could be an opinion. I think the way in which it's quoted in the opinion is not accurate from the paragraphs of the complaint and is taken out of context. And in terms of a trier of fact, all of the statements need to be put into the context in which they were made. Those are the court's quotes, but she doesn't refer to a specific paragraph of the allegation. She doesn't discuss the circumstances. If, in fact, you are having a conversation with the man in charge who has superior knowledge and he tells you a present intent, which is they're performing well and they are doing work on phase two, you have the implied impression from that that the contractor is meeting expectations. And meeting expectations is a significant fact for purposes of the entire panoply of circumstances that exist. Counsel, your time is quickly running. This will be my last question. What's the proof that Nelson intended not to go forward with the plaintiffs here? They're not the plaintiffs, but the engage point. What's the proof that when he made these representations there was no intent to continue with? The only proof in the record are the allegations of that fact. Facts outside the record suggest, and we believe will establish, had discovery been permitted, had we had an opportunity to get documents, had we had the opportunity to place witnesses under oath, that in fact it would establish that at the time the various statements were made from an agenda, that the facts internally would support the allegation that at the time he represented performance was satisfactory. Nelson himself had told others that it was not only unsatisfactory, but he was thinking of removing engage point to give the work to IBM. Our problem, Your Honor, is comments about that are outside the record and all we're asking this court is for the opportunity to take the discovery that we're entitled to determine what the facts are from the record and then address the issue of whether there were opinions, whether it was fact, or whether indeed we were wrongfully induced to loan money because what is alleged is that the State of Missouri, through Nelson, had not paid engage point, that they had a cash flow issue, and that Mr. Nelson was in dire need of new capital being infused into engage point, even though he knew they had not been paid by the State of Missouri. The yellow light is on and I'm happy to ask more questions, but with 22 seconds I can't reserve a great deal of time. If there are no other questions, I'd reserve what little bit of time I have for rebuttal. Thank you, Mr. Dickey. Thank you, Your Honor. Mr. Sauer. Thank you, Your Honor. May it please the court. John Sauer on behalf of the State of Missouri and former Commissioner Nelson in this case. I'd like to start by addressing Judge Benton's question about whether or not something was put in quotes in the allegations they made in the complaint about what was actually said at this December 5th, 2014 teleconference that is the absolute centerpiece of the claim of fraud in this case. And if you look at period of time, paragraphs 58, 59, 60, and 61 of the complaint in this case, there is no allegation, whether it's a quote, a paraphrase, or a description of what Nelson actually said in this alleged teleconference. Well, they haven't had discovery, so how close do they have to get? They have to plead with particularity. So Rule 9b clearly applies here and they have to plead with particularity, misrepresentations of Nelson in order to state a fraud claim. And obviously they need no discovery to allege this because they're saying it was their close cronies who were on this phone call. So the notion that they need discovery to find out what was said in this teleconference, you know, is not an argument that they can make in this context. And I would point out that, just look at the language here in paragraph 58. During the conference call, Nelson led Brevet Capital Management. Judge Smith, it is not true that they said they're on the phone call. They're saying there's another party, Brevet Capital Management, that's distinct from the two plaintiffs here that was on the call, led them to believe in, quote, words or substance. That's one of many examples of hedging language in this particular complaint. That engage point was performing well on Phase 1 of the system project and would likely continue working on Phase 2. So they're not alleging, hey, Nelson said this or Nelson said words to this effect. They're alleging that Nelson said something that's completely unspecified in the complaint and that whatever he said led this third party to form an opinion that Nelson had an opinion. Well, you know, that's true for some of them and that's the one that I focused on with opposing counsel. But there's others that suggest that, you know, given engage points, it's, quote, given engage points existing involvement with the system project as a prime contractor, it would not be necessary for Missouri to solicit bids from other contractors or issue an RFP. That's pretty strong language that we believe we're going to go forward. Your Honor, I would urge you to parse what's actually said in that paragraph 59 carefully because what is not said there is that he led them to believe that they would remain on as the prime contractor. What's alleged is that given that there is a prime contractor in this particular case, work would flow naturally to that prime contractor and there wouldn't be the need to have separate RFPs for Phase 2 and Phase 3. That's what's actually said there in paragraph 59, and that, in fact, is absolutely true. When you have a prime contractor, the work does flow naturally and you have this complex project where there is Phase 1, Phase 2, and Phase 3. It is absolutely true that the work flows naturally to the prime contractor. Completely absent from paragraph 59 is any allegation that he said, look, Engage Point is going to remain as this prime contractor. The only paragraph that alleges that is paragraph 58, arguably. And what is actually alleged in paragraph 58 is that they were, he made some completely unspecified statements and that led this third party to form an opinion that he had this opinion. And that introductory language, that language that shows that they're not alleging what Nelson actually said, is actually right there at the beginning of paragraph 59, too. Well, I agree that there's not quotes, but when you look at pleading with particularity, you want to know what the who, I think the cases say this, who, what, when, where. So the who is, is Nelson said it. The what is, you know, maybe you say there's no quotes here, but the where is on, you know, it's on the conference call. I mean, you have most of the elements of pleading with particularity here. Absolutely must have that what. What did he say, and it is not alleged. And so your argument would be a paraphrase just isn't sufficient. There is no paraphrase here, Your Honor. All there is that he made some comments that led a third party to believe. There is no paraphrase in 58, 59, 60, and 61. I think a paraphrase would be acceptable. Direct quote would be preferable, but it is not present there. So for that reason, they're actually two steps removed from pleading fraud with particularity. If you look at paragraph 60, again, he said that he was extremely confident that all three phases would be fully funded because this project had avoided the political controversy surrounding Obamacare. Once again, that turned out to be true. This project remained fully funded. 60 does not allege that he made a statement to them that Engagepoint will remain as the prime contactor throughout the life of the project. 61 is even worse because they say that, well, he led them to believe that he was already performing work on phase 2. They go on in paragraph 68 on the next page of the complaint to allege that that was true. So the allegations that they put, the statements that they're attributing to Nelson in paragraphs 59, 60, and 61 all turn out to be true. But the thing is, a reasonable listener, I think, you know, on a conference call, maybe you read a little into it, but you think, I mean, I read these statements and I think, boy, it sounds like Engagepoint's going through to the end. It really sounds like, you know, the commissioner of administration likes the work that they're doing and that there's a very, very high probability that they're going to remain and have the business until the end. But that kind of, to draw that impression from a complaint is insufficient under Rule 9. It may be sufficient in other contexts. Under Rule 9, they must allege what with particularity. There is no bar to them providing specific information in this complaint about what was actually said, right? And this, of course, is only the first step that they have. The second step is, even assuming that they had alleged, hey, he said on the phone, quote, I think they're likely to stay on, or, quote, I think that they're performing well. Those are opinions, and that was the principal basis for the district court's ruling in this case, that those are mere opinions, expressions of opinion or expectation. So there's two levels at which, at this first stage, they fail to allege fraud with particularity. Will the council in 59 finally get around to saying present intent? Those are magic words in Missouri law. Yes. You know what I'm referring to? They do. Because a present intent is different than all the other stuff we're talking about. Generally, Missouri draws a line at future and present. Just to put it real simple, that's Clark versus Olson. I agree, Your Honor. Okay. So is that enough, the fact that they finally get around to saying present intent? Absolutely not, Your Honor. To say that he expressed in the phone call, it is my present intent, X, that could arguably be a basis for the first element of fraud. We have a whole different problem with element ain't about the right to rely on those statements, which we can talk about in a second. But if you look at everything that happens before that, they're saying there were unspecified statements in this conference call that led a third party to believe, and, therefore, he led them to believe that he had that present intent. So the fact that they threw in the magic word present intent at the end of all four of these paragraphs adds nothing of particularity to this, because all the allegations are based on a complete lack of specificity as to what Nelson actually said, as opposed to what Brevet Capital Management came to believe as a result of Nelson's representations. And so right there, right off the bat, they are not getting over the substantial pleading responsibility that they have under Rule 9. But even setting that aside, we can just look at the district court's precedent. A statement of present intent, Your Honor, is not going to be sufficient to support a fraud claim for the reason that was alluded to in a question earlier, because under Missouri law, proof that that wasn't your present intent must be established by something other than the fact that you later didn't perform. Multiple Missouri cases that are – Missouri law cases that are cited in the briefs have said that. And therefore, under Rule 9, they must allege some factual basis to believe that that was not his present intent, other than their allegation that later on he did, in fact, terminate engage point. And that is completely absent from the complaint in this case. And they have a third problem of particularity under Rule 9, which relates to the eighth element of fraud under Missouri law, which is whether or not they have a right to rely on the representations that were made. In numerous cases, it's emphasized when you have a sophisticated party like this, a highly sophisticated contracting party looking at, at arm's length, a very important, difficult business transaction. In the language, I think, of the MyTech Partners case, for example, the court said that where the alleged – the plaintiff is, quote, sophisticated in business matters and had access to relevant information, the failure to conduct due diligence can deprive you of your right to rely. That reliance element, element eight, right to rely, is subject to the exact same particularity requirement under Rule 9b of every other element of fraud in this case. The problem for them is they have had zero allegations supporting – factual allegations that would support a right to rely as a matter of law in this particular petition. Well, now, how do we know about the contract? Is the contract in their complaint? As you know, the district court, the last page, talks about the contract. Yes, the RFP, I think, is Exhibit A or B. No, this is – I don't know if this is the RFP. This is allegedly the contract. The RFP is the contract. In other words, the provisions that are set for the RFP. It is at a later stage, as you know. But anyhow, address my point. How do we know about the contract? Is it in the complaint? The district court cites document 1-2, page 61. You know what that is or what – I believe – How do we know about the complaint? I believe – I mean, how do we know about the contract? Exhibit 2 – 1-2 is Exhibit 2 or Exhibit B to the complaint, which is the contract. Now, it actually is the RFP. My understanding – I could have this wrong – is the way that this actually works is that the provisions of the RFP – So, answer is it was part of the complaint. Exactly. It's an exhibit to the complaint. And so I would point out that that reliance element, the right to rely, element A to fraud under Missouri law, is subject to the same particularity requirement under Rule 9b as every other element. So, in order to plead under Rule 9b that they have a right to rely on any putative misrepresentation that Nelson may have made under this, they've got to provide information about due diligence. How would that look? Would it be we did our due diligence and we were on this conference call and our due diligence indicated there might be a problem, but we were reassured and we know that the commissioner of administration is, you know, in charge of this or whatever. Is that how that would look and therefore we relied on it? Yes, although that also would probably be insufficient as a matter of law, because what the Missouri cases go on to say is that you have no right to rely on an arm's length discussion with a third party unless there has been some misfeasance by the fraud feeser to induce you to rely on it or if there's a confidential relationship between the two of them. This is a very difficult element for a sophisticated business to establish, and that's why the MyTech Partners case said, hey, this may have been a pretty darn significant and material misrepresentation that was allegedly made, but too bad. You're sophisticated business entities. You have access to information to conduct your own due diligence. You lose. It fails to establish fraud as a matter of law. Now, what we have here is actually a step below that because there's no allegations at all. The only allegation about what due diligence they did is in paragraph 52 of the complaint where they say that the teleconference occurred after most of the due diligence has been completed. There's no allegations about what other due diligence they did, and most specifically here, there's no allegations about what information they got from EngagePoint. They're relying on Nelson's supposed superior knowledge of the business course of dealing between the state and EngagePoint, but they presumably have privileged access to information from EngagePoint because they're doing due diligence on a huge loan that allegedly EngagePoint badly needs, and so presumably they have access to the books and records of EngagePoint. They have access to talk to people at EngagePoint about how this has happened. There are no allegations in the complaint about whether they did that or not. If they said, oh, we never did that, no other due diligence was done, they clearly would have no right to rely. Or if they did that and EngagePoint says we've got all kinds of problems with the state and we're going to be terminated at any minute, that would also undercut their ability to rely on this as a matter of law. So this is a third problem for them under the particularity standard of Rule 9b. I can't emphasize the only allegation in the complaint that has to do with this particular issue is that sort of throwaway line in paragraph 52 that after most of the due diligence was done. Counsel, what's the record show about what is presently the state of EngagePoint itself and what part it played in any litigation after its termination? The court may take judicial notice of the fact that there is litigation pending between EngagePoint and the state by looking at court filings in the parallel state court case involving EngagePoint. Is that a Cole County case? It's a Cole County case, exactly right, Your Honor. And there's been claims and counterclaims filed in that case. That case is actually set for trial at the end of, I think, in May. I think the critical point here, Judge, is that the critical point here is that for that third-party standing question that the district court relied on, one of the elements there is whether or not there is some hindrance to the contracting party's ability to assert their own interests. For example, as to race discrimination claims, is there any bar to EngagePoint raising that themselves? And the answer is no. They could have but did not raise them in the parallel state court litigation. And that's the relevance of that particular case. Other than that, the court should be looking at, obviously, the four corners of the complaint here to see if fraud was alleged with particularity. I see I have very little time left. Unless there are other questions on the fraud question, I would like to briefly address the Section 1981 issue. And actually, maybe I'll address it briefly, both of the race discrimination allegations, both Title VI and Section 1981. We've given the legal arguments why those failed to state a claim and why the district court was correct in making that conclusion in her opinion. But I point out there's another difficulty here, which is, again, the allegations in the complaint about their reasons to believe that Nelson was engaged in some kind of invidious racial discrimination are so bare bones and so minimal that they fail to satisfy the plausibility standard of Iqbal and Twombly. So the court doesn't even need to get to the questions about whether or not there's an appropriate interest that could be sued or vindicated in this particular lawsuit where it's a third party under either of those racial discrimination civil rights statutes. Because if you look at what's actually alleged in the complaint, all that's alleged is there's a conclusory allegation in paragraph 76 of the complaint where they say, we have reason to believe, we have information and belief that people at engage points have reason to believe that he engaged in a course of conduct that reflected race discrimination. Nothing specific is provided as a basis there. And then they go on in paragraph 88 to say, well, he retained one white male as a consultant after engage point was terminated and he stated that he wanted to, quote, get away from the CEO of engage point who was a minority. That, if that is all they have, that fails to satisfy even the plausibility standard of Iqbal and Twombly in rule eight. I would direct the court's attention actually to the Painter's Mill case where there was a similar conclusion that the allegations hadn't been sufficient to satisfy this sort of highly charged allegation of race discrimination where the facts alleged there were much more extensive and much more sort of, raised a much more powerful inference of racial discrimination. Here they have, the allegations are so conclusory, so vague, so speculative and so bare bones, the court ought to conclude it need not even reach the question of whether or not there is a claim as a matter of law. Your Honor, I see my time has expired. If there's no further questions, I. Thank you, Mr. Sauer. Mr. Dickey, we asked you quite a few questions and you only got a few seconds, but we'll give you a full minute to reply. Thank you, Your Honor. First, in response to Judge Benton's question, the, I don't, still don't know what the Olin Dakota Access case law was in terms of state's law, but it was a rule nine case and federal pleading. So that holding, I think, is persuasive and from our perspective, the articulated requirements under Rule 9B, as stated there, basically say that you need to have, I just, I pulled them out, the time, the place, the general content of defendant's representations, a detail generally of the acts constituting the inducement and a description of the conduct occurred and the motivation for the conduct with an identification of who engaged in the fraudulent activity and the injury incurred. I would submit that on this complaint, defendant Douglas Nelson knows full well the nature of circumstances and has noticed not only because of what is alleged, but he is the speaker. How can he not know what he said? So the idea that for purposes of a pleading, even under 9B and the notice requirements, we have met that. The standard and the determination by the district court that reliance as a matter of law could not flow because the contract was terminal at will means the court overstepped and usurped the jury's authority on that issue. And then with respect to sophistication, the record is bereft of any real facts as to what the nature of the sophistication was and what sophistication they had allowed them to do what counsel suggested when the conduct and the statements were made. Given the timing of when it was called, when the call took place, what was the purpose of that call? I was just going to ask on your reliance point, opposing counsel made the point, look, you didn't even allege enough. I mean, the complaint doesn't tell you exactly what the due diligence was. It doesn't tell you how you relied on it. Is that a problem given the particularity requirement? I don't think the particularity requirement with respect to reliance goes into why I relied upon it other than to say we relied upon it because, and the complaint does allege, sir, that Commissioner Nelson is the person with the non-public knowledge. No matter what our reasonable due diligence included, the information that he had with respect to decision-making about the contract is within the purview of his own knowledge, and it's non-public. There's nothing in the context of due diligence that I could find out about what they were doing internally. So in that context, talking to him and getting the statements which we've alleged would suggest exactly what Your Honor suggested, that right now this is a great relationship with this contractor, and we submit that with discovery and the opportunity to ask people questions under oath, we would be able to establish to a jury a reasonable conclusion. Thank you. We just simply ask that the matter be reversed and remanded for further proceedings. Thank you, Mr. Duchess. The court wishes to thank both counsel for your presence. The arguments you've provided to the court this morning, the briefing that you've submitted will take your case under advisement, render a decision in due course. Thank you.